Filed 12/11/25  In re R.G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.G. et al., Persons Coming Under the Juvenile Court Law. | B343394 |
| | (Los Angeles County Super. Ct. No. 22CCJP04876) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

This is the third appeal in this case by T.G. (Father), father of a three-year old son, R.G., and twenty-month old daughter, T.G. In the first appeal, Father sought to reverse the juvenile court's January 2023 order asserting dependency jurisdiction over R.G., limiting Father's education rights to his child, and requiring that his visits be supervised. (*In re [R.]G.* (July 18, 2024, B326637) [nonpub. opn.].) We affirmed. Father's second appeal challenged the juvenile court's December 2023 termination of his reunification services for R.G., and the bypass of any reunification services for T.G. (*In re [R.]G., et al.* (Apr. 22, 2025, B333730) [nonpub. opn.] (*R.G. & T.G.*).) We affirmed.

Father now challenges the juvenile court's decision to deny his petition, filed pursuant to Welfare and Institutions Code section 388,[1] to seek modification of the court's denial of reunification services. Specifically, Father sought to have the children placed in his home, or alternatively to be restored reunification services with monitored visitation. Once again, we affirm.

_____

[1] Unless stated otherwise, statutory references are to the California Welfare and Institutions Code.

# I.
# BACKGROUND

## A.    Our Prior Cases

Since this is the third time we are reviewing a juvenile court order in this case, we will not provide a detailed synopsis of the reasons for these dependencies or the history of these proceedings.  It is sufficient for our review of the challenged order to state in summary that the children were removed from Father and their mother for their inability to care for the children due to their ongoing substance abuse.[2]

Among other things, Father's case plan for R.G. included monitored visitation, a full drug and alcohol treatment program, weekly random drug testing, a 12-step program, parenting education, and individual counseling.  (*R.G. & T.G., supra,* B333730.)  Father's services for R.G. were terminated in December 2023, because he neither steadily visited R.G., nor made any substantial progress in resolving issues that led to his son's removal or demonstrated an ability to fulfill the objectives of his treatment.  (*Ibid.*)  Father's services for T.G. were bypassed once his services for R.G. were terminated because of Father's inability to reasonably address the causes for R.G.'s removal from his care.  (*Ibid.*)  The order continued to allow Father supervised visitation.  We affirmed the termination of services to Father for R.G., and the bypass of services for T.G.  (*Ibid.*)

Since March 3, 2023, the children have been with a foster caregiver who has expressed a willingness to adopt them if they do not reunite with their parents.  Reports from the Los Angeles

---

[2]    The children's mother, J.S. (mother), is not part of this appeal, and their older sibling and half-sibling are not involved in this case.

County Department of Children and Family Services (Department) state that the children are attached and have bonded with their caregiver and her family, are meeting all their developmental milestones, and are happy and healthy.

**B.     This Appeal**

In November 2024, Father petitioned the juvenile court to change the orders denying his reunification services for each child.  He supported the petitions with evidence that he had completed an outpatient substance abuse program, a fundamentals of fatherhood program, and was engaged in mental health services.  The petition alleged the requested change was in the children's best interest because Father was ready to provide a home for them, and they would benefit from being raised by their biological father.

The Department filed an interim report in connection with the juvenile court's evaluation of Father's petitions.  The report showed that while Father completed the programs specified in his petition, he was not engaged in ongoing aftercare for his substance abuse, and did not participate in AA/NA meetings or have a sponsor.  Father told the investigating social worker that he did not feel he needed any follow up services for his substance abuse.  The Department could not confirm that Father was engaged in ongoing mental health counselling.

In the months following entry of the December 2023 order, there was some difficulty finding a suitable monitor for Father's visits.  So, weekly visiting did not begin until April 21, 2024, when Father's sister agreed to monitor visits every Sunday.  That first visit was reported to have gone well, and there were no apparent problems or issues.  It appears that weekly visits continued until June 20, 2024, when Father's sister said she

could no longer monitor visiting.  But our record does not reflect any visits between April 21, 2024, and December 12, 2024.

On December 4, 2024, a social worker contacted Father, and asked if he knew of anyone who could monitor his visits.  Father said he did not.  The social worker told Father that she would monitor visiting for him, and he was to confirm his attendance by phoning or texting her a day before each scheduled visit.  Father visited with the children on December 12.  Both children were initially reluctant to go to Father, but after some time the children were playing with Father and seemed happy.  Father terminated this visit an hour early.  It was the social worker's impression that, while Father behaved appropriately and was attentive to his children during the visit, they did not seem particularly bonded with or attached to him.

On December 18, 2024, the social worker called Father to remind him to confirm the next visit.  When she did not get a confirmation from Father the following day, she contacted him again and Father stated that he wanted to be advised of upcoming visits by telephone or email before confirming his attendance.  It does not appear that Father visited with the children on December 19 or anytime thereafter.

The children's foster care provider stated that Father never had virtual or telephonic visits with the children, or had asked her about their well-being.

The juvenile court summarily denied Father's petitions, and set the case for a permanency planning hearing pursuant to section 366.26.  Father's appeal is timely.

## II.
## DISCUSSION

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child.  [Citation.]  A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request.  [Citation.]  [¶]  However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition.  [Citations.]  The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition."  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

"[A] hearing may be denied only if the application fails to reveal any change of circumstance or new evidence which might require a change of order."  (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414; see also *In re Zachary G., supra,* 77 Cal.App.4th at p. 806 [affirming summary denial of petition that showed changed circumstances but not that proposed change was in the child's best interests].)  We review the juvenile court's determination for abuse of discretion.  (*In re Zachary G., supra,* at p. 808; *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450.)

When dependency proceedings are at the stage of the section 366.26 hearing, the parent's interest in the care, custody and companionship of the minor is subordinate to the child's needs for permanency and stability.  (*In re Marilyn H.* (1993)

5 Cal.4th 295, 309.)  A section 388 petition that would, if granted, delay the child's placement in a permanent home to see if a parent may someday be able to reunify with the child "does not promote stability for the child or the child's best interests."  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  "In fact, there is a rebuttable presumption that continued foster care is in the best interest of the child [citation]; such presumption obviously applies with even greater strength when the permanent plan is adoption rather than foster care.  A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, what is in the best interest of the child."  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464; see also *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Marilyn H.*, *supra*, at p. 310.)

The juvenile court properly found Father failed to make a prima facie case that providing him reunification services at this stage would promote the children's best interests.  Father's petitions focused primarily on his performance in sobriety and parenting programs, and did not assert the strength of his loving relationship with his children.  As the juvenile court reasonably found, Father's petitions did not establish a prima facie case that extending the dependency period so Father could engage in reunification services would serve the children's best interests.

"Childhood does not wait for the parent to become adequate."  (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 310.)  Despite whatever commendable progress Father has made in overcoming his substance abuse, nothing in his section 388 petitions established that it was in the children's best interest to disrupt a successful placement and delay their interest in a possible

adoption and safe and permanent home. The court properly denied Father's petitions without a hearing.

## III.
## DISPOSITION

The January 9, 2025, orders denying Father's petitions to modify orders of the juvenile court are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

SIGGINS, J.*

We concur:

CHAVEZ, Acting P. J.

RICHARDSON, J.

---

\*      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.